Owen W. CRUMPACKER, Plaintiff,

v.

James T. MOODY, et al., Defendants.

No. H 79–0161.

United States District Court,
N. D. Indiana,
Hammond Division.

April 24, 1981.

Owen W. Crumpacker, pro se.

Hamilton L. Carmouche, Clorius L. Lay, Gregory Reising, Reising, Schmidt, Gary, Ind., Kenneth D. Reed, Hammond, Ind., Robert L. Deloney, Gary, Ind., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge: *

This action—as well as three other related cases [1]—has its roots in a contempt of court citation issued against plaintiff Owen W. Crumpacker during the course of his representation of certain defendants in a state court condemnation proceeding. *State of Indiana v. Kushner*, 36721–C (LaPorte Circuit Court, April 29, 1975). The chonology of events stemming from that order has been set forth by this Court in a separate opinion issued April 22, 1981, *Crumpacker v. Farrell*, Hammond Civil No. H 79–108 (N.D.Ind., April 22, 1981), and need not be repeated in detail here. It suffices to note that upon the eve of enforcement of the contempt citation on October 26, 1978, Crumpacker entered St. Margaret Hospital in Hammond for emergency treatment; shortly thereafter he was transferred to St. Catherine's Hospital in East Chicago so that doctors could perform an angiogram. It is alleged that during his period of hospitalization, which lasted until November 15, 1978, various Lake County Sheriffs posted guard outside his hospital room, discouraging doctors from performing their routine duties and preventing Crumpacker from seeking medical assistance at Northwestern University Medical Center in Chicago, Illinois. Complaint, ¶ 16. Crumpacker further alleges that his former clients in the condemnation proceeding and their attorneys masterminded this conspiracy to deprive him of medical assistance by seeking to enforce the contempt citation in

---

* On August 12, 1980, Owen W. Crumpacker, a defendant herein, and his wife, Eleanor Mary, named as defendants in a civil rights suit the judges of the United States District Court for the Northern District of Indiana. *Crumpacker v. Civiletti*, Hammond Civil No. H 80–451 (N.D. Indiana). As a result, the Honorable Phil M. McNagny, Jr., who originally presided over this action, as well as the other judges in this district, have recused themselves pursuant to 28 U.S.C. § 455 from all litigation involving Owen and Eleanor Crumpacker. On September 16, 1980, the Honorable Thomas E. Fairchild, Chief Judge for the United States Court of Appeals for the Seventh Circuit, designated this Court pursuant to 28 U.S.C. § 292(b) as a special district court for the Northern District of Indiana for the purpose of presiding over this and other litigation involving Owen and Eleanor Crumpacker.

1. *Crumpacker v. Farrell*, Hammond Civil No. H 79–108 (N.D.Ind.); *Crumpacker v. Farrell*, Hammond Civil No. H 79–102 (N.D.Ind.); *Crumpacker v. Farrell*, Hammond Civil No. H 79–86 (N.D.Ind.).

the first place (¶¶ 9, 11); by initiating a rule to show cause proceeding against St. Margaret Hospital and treating physician Dr. Albert T. Willardo for refusing to surrender custody of him to the sheriffs (¶¶ 12, 13); and by successfully opposing his petition for writ of habeas corpus, which sought to prevent the sheriffs from taking him from the hospital (¶ 15). Plaintiff contends that this conduct violated the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and Indiana state law.[2] Crumpacker seeks $1 million in compensatory and punitive damages for the injuries he allegedly suffered as a result of the denial of medical assistance.

This case now comes before the Court on a number of motions directed both to the adequacy and to the merits of the complaint. Three of the attorney defendants—Abrahamson, Reed, and Reising—have moved for dismissal or, in the alternative, for summary judgment. By separate motions the remaining attorney defendant (Deloney) and the former-client defendants (Steve Gersack, Doris Gersack, and Abe Kushner) have moved to dismiss the pleading. The defendant sheriffs—Farrell and Spikes—have moved for summary judgment.[3] In light of plaintiff's failure to respond to any of these motions,[4] the Court must consider these motions without the benefit of plaintiff's views.

## ABRAHAMSON, REED, REISING MOTION[5]

Plaintiff's allegations against these attorney defendants fall within two distinct categories. First, there are the numerous allegations that concern the validity of any attempt to enforce the April 29, 1975, contempt citation issued against him by the Honorable Alban M. Smith. *See* ¶¶ 6, 8, 9, 11, 15. As the Court held in the companion opinion issued April 22, 1981, however, the validity of the contempt order and the actions deriving therefrom have been resolved and no longer are open to question. *Crumpacker v. Farrell,* Hammond Civil No. H 79–108, Slip Op. at 6 (N.D.Ind., April 22, 1981). These allegations, therefore, are insufficient to maintain this action.

Second, Crumpacker alleges that these defendants conspired to prevent the doctors at St. Margaret and St. Catherine's from providing him with the necessary medical treatment. In particular, plaintiff claims that as a result of defendants' conduct, he (1) was unable to proceed with the angiogram scheduled at St. Catherine's (¶ 15); (2) failed to receive routine care and supervision (¶ 16); and (3) was prohibited from seeking medical treatment at the facility of his choice: Northwestern University Medical Center in Chicago, Illinois,[6] (¶ 16).

The testimony of Dr. Willardo at the rule to show cause hearing, however,

2. Moreover, as is true with the other related litigation, the underlying premise for Crumpacker's claims here is the purported conspiracy to extort from him some $70,000 and various files relating to the state condemnation proceeding.

3. Judge James T. Moody, a defendant here and in Hammond Civil No. H 79–108, successfully moved for summary judgment on the ground of judicial immunity. *Crumpacker v. Moody,* Hammond Civil No. H 79–108, H 79–161 (N.D. Ind., June 13, 1979), *aff'd* 639 F.2d 785 (7th Cir., 1980).

4. The motions by Abrahamson, Reed, and Reising, and by the Gersacks and Kushner, are approximately two years old. The Deloney motion to dismiss is fourteen months old, and the sheriff-defendants' motion for summary judgment was filed in November, 1980. The Court on November 21, 1980, ordered plaintiff to respond to all of these motions on or before

December 8, 1980. When that deadline had passed without compliance by plaintiff, the Court on its own motion allowed plaintiff until January 9, 1981, to respond to the motions. At that time, the Court warned that no further extensions of time would be granted and that after January 9 the Court would proceed to consider the motions, with or without plaintiff's briefs. Pursuant to this order, the Court denied plaintiff's motion, filed January 12, 1981, for an extension of time to file responsive briefs.

5. Because these defendants have submitted extrinsic evidence in support of their motion, the Court considers the motion as one for summary judgment. *See* Fed.R.Civ.P. 12(b), 56(b).

6. In paragraphs 3 and 7, plaintiff alleges more generally that the defendants conspired to deny him medical treatment. These broad, conclusory allegations, however, add nothing to the

refutes these first two allegations. Dr. Willardo stated that although Crumpacker had been transferred to St. Catherine's for the purpose of performing an angiogram, he subsequently had refused to have the tests done: "He has refused to have the angiography. Now he is not wanting to go ahead with the testing." Transcript of the Testimony of Dr. Albert T. Willardo, M.D., at 39–41, in *Crumpacker v. Pruitt*, Cause No. 175–528 (Lake Superior Court, November 8, 1978) (hereinafter "Willardo Testimony"). Moreover, Dr. Willardo stated that he had visited Crumpacker during his daily rounds, and that Crumpacker had received three electrocardiam tests and a brain scan during his period of hospitalization. Willardo Testimony at 11, 17–19. Plaintiff has failed to bring to the Court's attention any evidence which would suggest that there is any dispute as to these essential facts. As Professor Moore has observed, a party who fails to present evidentiary materials in opposition to a motion for summary judgment acts at his peril. 6 Pt. 2 Moore's Federal Practice ¶ 56.23 at 1390–1392. Accordingly, the Court finds that the evidence of record establishes that defendants did not prevent plaintiff from receiving angiogram testing or ordinary medical treatment.

Dr. Willardo's testimony also is enlightening as to Crumpacker's claim that he was denied the right to seek medical assistance in Chicago. Dr. Willardo stated that plaintiff from the outset asked his doctors to permit the angiogram testing to be done in Chicago. Although the doctors were ordered to grant this request because of the quality of the facilities in Chicago, Dr. Willardo advised against such a transfer because he recognized that it might hinder the ongoing attempt to enforce the contempt

citation. Willardo Testimony at 20–21, 31–32. Dr. Willardo's testimony that the doctors were willing to proceed with the angiogram at St. Catherine's indicates that they considered the facilities there adequate to ensure plaintiff's safety.

Plaintiff's claim, therefore, cannot be that he was completely denied treatment by virtue of his inability to travel to Chicago, but rather that he was denied the superior treatment that he would have received in Chicago. The Supreme Court has recognized that the failure to provide a prison inmate with adequate medical assistance can constitute a violation of the eighth amendment. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976).[7] The Court cautioned, however, that not every claim of medical malpractice is thereby automatically transformed into a constitutional claim. *Id.* at 106, 97 S.Ct. at 292; *see also Martinez v. California*, 444 U.S. 277, 285, 100 S.Ct. 553, 559, 62 L.Ed.2d 481 (1980) ("Although § 1983 claim has been described as 'a species of tort liability' . . . it is perfectly clear that not every injury in which a state official has played some part is actionable under that statute.") Rather, a plaintiff seeking to recover under the eighth amendment for inadequate medical treatment must show circumstances of "deliberate indifference to serious medical needs," such as intentional interference with the treatment that is prescribed. 429 U.S. at 104, 105, 97 S.Ct. at 291–292.

The case law is clear that the denial of which plaintiff herein complains does not rise to constitutional dimensions. In *Phillips v. Collins*, 461 F.Supp. 317 (N.D.Ill. 1978), the court rejected a claim that the refusal of a state judge to hospitalize rather than incarcerate a person found unfit to

---

more specific statements contained in the complaint.

**7.** The Court observes that the cases recognize the right to medical treatment under the eighth amendment and section 1983 in the specific context of prisoner complaints, on the principle that "it is but just that the public be required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself." *Estelle*, 429 U.S. at 104, 97 S.Ct. at 291, *citing*

*Spicer v. Williamson*, 191 N.C. 487, 132 S.E. 291, 293 (1926). There is some question as to the extent to which this doctrine applies outside the prison context. Plaintiff, however, does suggest that he was effectively incarcerated in his hospital rooms by reason of the sheriffs who stood guard. Complaint, ¶¶ 15–16. Therefore, the Court in the subsequent discussion assumes *arguendo* that the rule stated in *Estelle* applies in the instant case.

stand trial stated a claim under the eighth amendment. The court noted that while in jail the plaintiff had received psychiatric evaluation and treatment, thereby negating any allegation of "deliberate indifference" to his medical needs. *Id.* at 318. Similarly, in *Shaffer v. Jennings,* 314 F.Supp. 588, 589 (E.D.Pa.1970), the court found unpersuasive plaintiff's claim that his eighth amendment rights had been violated by his incarceration in an institution which lacked facilities for ulcer treatment:

> Plaintiff's claim here amounts to no more than an averment that the facilities in Dallas are inferior to those in Philadelphia in providing him the care he requires. As such, the plaintiff has failed to properly alleged (sic) a constitutional deprivation and has merely alleged an action sounding in tort.

In this case, defendants' efforts to prevent plaintiff from leaving Indiana did not render it impossible for plaintiff to obtain treatment adequate for his condition.[8] To the extent that plaintiff failed to obtain treatment, it was the result of his choice not to utilize the facilities he had available to him for that purpose. Thus, on the basis of the undisputed facts as established by the evidence submitted by defendants and the applicable case law, the Court grants defendants' motion for summary judgment.[9]

The other moving defendants have not raised these grounds as the basis for terminating this litigation. Deloney has moved to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6); the Gersacks and Kushner seek summary resolution based on a settlement agreement entered in an earlier action; and the sheriff defendants ask for summary judgment based on state statutory immunity. Nonetheless, the Court has the authority to grant motions directed to the pleadings even on grounds not specified therein. *Robinson v. Mammoth Life & Accident Insurance Co.,* 454 F.2d 698 (7th Cir. 1971), *cert. denied,* 409 U.S. 872, 93 S.Ct. 202, 34 L.Ed.2d 123 (1972). Since the principles that favor preclusion of relitigation enunciated by defendants Abrahamson, Reid, and Reising apply equally to the remaining movant defendants, the Court grants summary judgment in favor of the remaining defendants as well.[10]

Accordingly, the Court enters summary judgment in favor of all defendants to this action. It is so ordered.

---

8. Dr. Willardo also stated on several occasions that he considered the plaintiff out of danger and well enough to be moved. *See, e. g.,* Willardo Testimony at 19, 43. Plaintiff alleges otherwise in his complaint, *see* ¶¶ 15–16, but these bare allegations cannot stand in the face of uncontroverted extrinsic evidence.

9. The resolution of the federal claims at an early stage of the litigation persuades the Court that it is appropriate to dismiss the pendent state law claims. *Gibbs v. United Mine Workers,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

10. For this reason, the Court need not address the grounds offered by the defendants in support of their motions.